**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Don Addington; John Bostic; Mark Burman; Afshin Iranpour; Roger Velez; Steve Wargocki,<br><br>Plaintiffs,<br><br>vs.<br><br>US Airline Pilots Association; US Airways, Inc.,<br><br>Defendants. | No. CV 08-1633-PHX-NVW (consolidated)<br><br>**ORDER** |
| Don Addington; John Bostic; Mark Burman; Afshin Iranpour; Roger Velez; Steve Wargocki, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>Steven Bradford; Paul Diorio; Robert Frear; Mark King; Douglas Mowery; John Stephan, et al.,<br><br>Defendants. | CV08-1728-PHX-NVW |

Defendants ("East Pilots") filed a motion to dismiss this action under Fed. R. Civ. P. 12(b)(1), (2), (3), (6) and (7).  (Doc. # 16.[1])  The motion has already been denied as to Rules

---

[1] All references to document number are to documents filed in CV08-1728-PHX-NVW.

12(b)(3) and (7).  (Doc. # 21.)  Now that the briefing on the remaining motions is complete, the court considers the remainder of the East Pilots' motion.  It is unnecessary to restate the factual background for reasons already made clear in the court's November 21, 2008 order.  Although personal jurisdiction is proper in this case, the East Pilots' motion to dismiss will be granted because the state law claims are preempted by federal law.

**I. Personal Jurisdiction**

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  In a class action such as this one, the test is whether the named defendants meet jurisdictional criteria.  *See Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 n.5 (C.D. Cal. 2001).  "Unless directly contravened, [a plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [a plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists."  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (internal quotation marks and citation omitted).

Arizona's long-arm rule, applicable in this diversity suit, "provides for personal jurisdiction coextensive with the limits of federal due process." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997); *see also* Ariz. R. Civ. P. 4.2(a).  Due process requirements are satisfied if the out-of-state defendant has "at least 'minimum contacts' with the relevant forum." *Schwarzenegger*, 374 F.3d at 801.  In this circuit, the test contains three parts: "(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum . . . (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must . . . be reasonable." *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1111 (9th Cir. 2004) (ellipses original).

1 In this breach of contract action, the "purposeful availment" requirement is satisfied because the East Pilots have "created continuing obligations to forum residents." *Id.* at 1113 (internal quotation marks and citation omitted). In their First Amended Complaint (doc. # 8), Plaintiffs (the "West Pilots") allege that the East Pilots, as individuals, agreed to participate in and be bound by an arbitration to resolve a seniority dispute between the two pilot groups. The arbitration was conducted and an award (the "Nicolau Award") spelled out the relative seniority rights between the groups. According to the West Pilots, the East Pilots were required to abide by this award as the final and contractually binding resolution of their dispute. The East Pilots have not done so. Rather than conducting internal union affairs and labor negotiations in accordance with the award, the East Pilots have announced an intent to repudiate the Nicolau Award. They have mounted an ongoing campaign to impose a different seniority structure on the West Pilots. This alleged breach must flow from a continuing obligation to West Pilots (who are Arizona residents) to abide by the Nicolau Award. The East Pilots therefore have minimum contacts with Arizona, and the claim against them arises out of those contacts.

The exercise of jurisdiction is reasonable in this case. Seven factors govern this inquiry: "(1) the extent of a defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interests in convenient and effective relief; and (7) the existence of an alternative forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002).

The East Pilots' continuing obligation to the West Pilots under the alleged agreement was a purposeful interjection into Arizona affairs; they knowingly concluded and sought to undermine these duties to the Arizona pilots. This fact alone satisfies the standard as to all named Defendants, but some of them also traveled to Arizona. Shortly before April 2008, Defendants Bradford and King went to Phoenix to make a presentation to the West Pilots

regarding the Nicolau Award. On the same day these two defendants and Defendant Mowery met with US Airways management in Tempe. Evidence also suggests that the USAPA Merger Committee and Negotiating Advisory Committee met with US Airways representatives in Arizona to pass to the Company their date of hire seniority list. Defendant Diorio is the Chairman of the Negotiating Advisory Committee and Defendant Frear is one of its members.

None of the other factors renders jurisdiction unreasonable. The burden of defending the case in Arizona is not extraordinary; though the East Pilots are far away, both the East and West Pilots are employed by an Arizona company, and many of the events at issue and witnesses to be called are located in Arizona. The case presents no apparent conflict with the sovereignty of another state. Arizona has an interest in the adjudication of this dispute as it relates to Arizona residents and an Arizona employer. Judicial efficiency favors keeping the action here because some of the evidence is located in Arizona and this court is already familiar with the complexities of the controversy. The forum is convenient for plaintiffs, who reside and work here, and there is no persuasive reason why the East Pilots' chosen forum—North Carolina—would be preferable.

Defendants argue that their only contact with Arizona arises out of their official acts as officers of USAPA and that they are therefore not subject to personal jurisdiction in this forum, citing *Skydive Ariz., Inc. v. Quattrochi*, No. CV 05-2656-PHX-MHM, 2006 WL 2460595, at *6, 2006 U.S. Dist. LEXIS 63299, at *16 (D. Ariz. Aug. 22, 2006). This analysis is error. Plaintiffs do not base their claim on Defendants' official acts as such. Plaintiffs allege that the Defendants as individuals were contractually bound to honor the Nicolau Award, and that Defendants as individuals have breached their obligation to do so. Any official significance to their acts arises subsequent to that obligation; it does not create a shield to the exercise of jurisdiction. Plaintiffs are alleged to have breached their personal state law obligations whether or not they did so as union officials.

For these reasons, the motion to dismiss for lack of personal jurisdiction will be denied.

### II. Federal Preemption

The East Pilots next assert that the breach of contract action must be dismissed because it is preempted by federal law. This court agrees. The West Pilots invoke a series of contractual rights and remedies, each of which encroaches too far on the domain of federal regulation. As both parties acknowledge, the East Pilots have formed USAPA, a union that opposes the implementation of the Nicolau Award. In effect, the West Pilots seek injunctive relief regarding union actions that are governed by the statutory duty of fair representation. Their suit represents a challenge to the exclusive authority of a union to represent its members. These areas of federal legislation preempt the application of state rules of decision.

"[S]tate laws that frustrate the purpose of the [Railway Labor Act ("RLA")] are preempted." *Air Transp. Ass'n of Am. v. City & County of S.F.*, 266 F.3d 1064, 1076 (9th Cir. 2001). While the Ninth Circuit has not directly addressed the preemptive force of the union's representational functions, caselaw from other circuits is persuasive. "The duty of fair representation is a corollary of the union's status as the exclusive representative of all employees in a bargaining unit." *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1169 (4th Cir. 1985). "The rights and duties of unions in carrying out their representational functions is an area where the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 322 (3d Cir. 2004) (internal quotation marks and citation omitted). Where federal labor law protects the rights at issue—as it does here—two exceptions to preemption may apply. They arise where there is "conduct 'deeply rooted in local feeling and responsibility'" or "matters of only 'peripheral concern' to federal labor relations law." *Id.* at 321 (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959)). State law claims alleging misconduct on the part of union officers in the course of their representational duties "can hardly be called a peripheral concern to federal labor law." *Peterson*, 759 F.2d at 1169. This is the stuff of federal fair representation claims.

Although the West Pilots' aim their present action at individual union members rather than the union as a whole, the injunctive relief they seek is identical in function to the relief sought in their companion action against the union. Enjoining USAPA's officers to negotiate toward implementing the Nicolau Award is tantamount to enjoining USAPA itself. *See id.* at 1170 (finding preemption where same relief is sought under both the RLA and state law). The potential for conflict between the state and federal law is clear; if the court were to grant relief on the state contract claims but deny it under federal law, the injunction against the union officer would trammel the union's ability to represent US Airways pilots fairly and in accordance with federal law. "[T]he representative is clothed with power not unlike that of a legislature," *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 198-99 (1944), delimited by federal law in its powers and existence. It would defy this principle to allow some workers, by invoking the law of a single state, to gain control over a union's internal mechanisms of representation. The West Pilots' state contract actions bear directly on representation concerning the seniority rights of the pilots. *See Bensel*, 387 F.3d at 321. There is no state interest "deeply rooted in local feeling and responsibility" here; the contract actions attempt only to duplicate or override the federal framework of labor relations. *See Bensel*, 387 F.3d at 321. Seniority rights are a "central aspect of employment"; "[t]he RLA determines the rights, obligations, and duties of employees, their representatives, and carriers with respect to negotiations and agreements" in this area. *Id.* The West Pilots' claims for breach of contract are therefore preempted.

It bears noting that the West Pilots have purported not to allege a breach of any collective bargaining agreement. "[A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 396 (1987) (NLRA case). Even assuming the West Pilots' claims are not based on a collective bargaining agreement, they nevertheless are preempted because they interfere with the federal scheme of internal union decisionmaking and governance.

- 6 -

1  The East Pilots argue that preemption deprives the court of jurisdiction and requires dismissal under Rule 12(b)(1). The court's November 21, 2008 order established that there is subject matter jurisdiction with respect to the original state court complaint under 28 U.S.C. § 1441 and *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994). That jurisdictional basis—the complete preemption of state law claims by the RLA's duty of fair representation—remains sound. However, on reexamination, the question is a closer one than the previous order indicates.

In a lengthy and learned analysis, the Second Circuit has rejected complete preemption under the RLA as a basis for removal jurisdiction. *See Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273-78 (2d Cir. 2005). *Sullivan* placed great weight on the Supreme Court's recent failure to mention the RLA as a source of complete preemption that supports jurisdiction. The Supreme Court's language is as follows: "In the two categories of cases where this Court has found complete pre-emption—certain causes of action under the LMRA and ERISA—the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) (footnote omitted). The Second Circuit takes this omission of the RLA to mean that *Hawaiian Airlines*, which applied substantive LMRA preemption doctrine in an RLA case, did not also import the jurisdictional ramifications of LMRA preemption to the RLA context.

The Ninth Circuit has not addressed this issue; a split of authority within the circuit predates both *Hawaiian Airlines* and *Beneficial National Bank*. *See Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 669 n. 4 (9th Cir.1993) (noting intra-circuit conflict). The Second Circuit's handling of the recent Supreme Court authority is persuasive, and this court agrees with it. However, *Sullivan* and other similar circuit court opinions do not address the preemptive force of the duty of fair representation, but only the preemptive force of the federal law that governs minor disputes under a collective bargaining agreement. *See Sullivan*, 424 F.3d at 270; *Roddy v. Grand Trunk W. R.R.*, 395 F.3d 318, 326 (6th Cir. 2005);

1  *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1357 (11th Cir. 2003); *Ry. Labor Executives*
2  *Ass'n v. Pittsburgh & Lake Erie R.R.*, 858 F.2d 936, 942-43 (3d Cir. 1988).

3        The difference is significant. While the LMRA provides a federal right of action for
4  contract disputes, 29 U.S.C. § 185, the RLA requires exhaustion of administrative remedies.
5  *See Sullivan*, 424 F.3d at 275-76; *Beneficial Nat'l Bank*, 539 U.S. at 8 (lack of a federal cause
6  of action undermines complete preemption). It is fundamental, however, that a plaintiff may
7  bring suit under the RLA to enforce the duty of fair representation. *Crusos v. United Transp.*
8  *Union, Local 1201*, 786 F.2d 970, 973 (9th Cir. 1986). Thus, there is still life to the older
9  authority holding that the duty is completely preemptive, as it is in the LMRA context. *See*
10 *Kollar v. United Transp. Union*, 83 F.3d 124, 125-26 (5th Cir. 1996). "Because federal law
11 completely governs the duties owed by an exclusive collective bargaining representative to
12 those within the bargaining unit, and because this manifestation of congressional will so
13 closely parallels Congress's intentions with regard to section 301 . . . a district court
14 possesses federal question jurisdiction when a complaint, though garbed in state-law raiment,
15 sufficiently asserts a claim implicating the duty of fair representation." *BIW Deceived v.*
16 *Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831-32 (1st
17 Cir. 1997) (LMRA case). *But see US Airways Master Executive Council, Air Line Pilots*
18 *Assoc., Int'l. v. Am. West Master Executive, Council, Air Line Pilots Assoc., Int'l.*, 525 F.
19 Supp. 2d 127, 134 (D.D.C. 2007). The court is persuaded that complete preemption still
20 provides a basis for jurisdiction in the narrow realm of RLA cases where a state cause of
21 action has the purpose and effect of dictating a union's representation of its members. The
22 original state court complaint explicitly did just that.

23       Jurisdiction having been established, the force of the preemption is therefore to
24 prevent state law from supplying a claim or rule of decision upon which the West Pilots can
25 be granted relief. Any legal effect of the Transition Agreement or other agreements will be
26 adjudicated in light of federal rules of decision, which may or may not refer to principles of
27 state contract law. It is unnecessary to consider the parties' remaining arguments regarding
28

- 8 -

the validity of any federal fair representation claim or the preemptive force of the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.*

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (doc. # 16) is **denied** as to Rules 12(b)(1), (2), (3), and (7), and **granted** as to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the alleged state law claims being federally preempted.

DATED this 24th day of December, 2008.

_____
Neil V. Wake
United States District Judge