1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Don Addington; John Bostic; Mark Burman; Afshin Iranpour; Roger Velez; Steve Wargocki,<br><br>Plaintiffs,<br><br>vs.<br><br>US Airline Pilots Association; US Airways, Inc.,<br><br>Defendants. | No. CV 08-1633-PHX-NVW<br>(consolidated)<br><br><br>**ORDER** |
| Don Addington; John Bostic; Mark Burman; Afshin Iranpour; Roger Velez; Steve Wargocki, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>Steven Bradford; Paul Diorio; Robert Frear; Mark King; Douglas Mowery; John Stephan, et al.,<br><br>Defendants. | CV08-1728-PHX-NVW |

Plaintiffs brought suit against Defendant US Airline Pilots Association ("USAPA") alleging that USAPA breached its duty of fair representation. Plaintiffs have now moved under Fed. R. Civ. P. 23(b)(2) to certify a class of "[a]ll pilots employed by the airline US Airways in September 2008 who were on the America West seniority list on September 20,

2005." (Doc. # 120.) Defendant USAPA opposes this motion. Because certification in this case is appropriate under Rules 23(a) and (b)(2), the Plaintiffs' motion will be granted.

### I.     Factual Background

The allegations are summarized here, having already been detailed in prior orders of this Court. (*E.g.*, doc. # 84). Plaintiffs are pilots who were employed by America West Airlines Inc. when that airline merged with US Airways, Inc. ("US Airways"). After the merger, a union arbitration process resulted in a single merged seniority list for the pilots of both airlines. This arbitrated award (the "Nicolau Award") purported to balance the career interests of the two pilot groups. Pilots who worked for US Airways before the merger ("East Pilots") were unhappy with the award, so they used their majority status to vote out the old union and constitute a new union, USAPA, that would abandon it.

Plaintiffs filed this lawsuit alleging that USAPA violated its duty of fair representation by casting the Nicolau Award aside in favor of East Pilot interests. They subsequently amended their complaint to bring this action on behalf of a class of approximately 1700 similarly situated pilots who were on the America West seniority list a few months after the merger announcement (the "West Pilots"). In their motion, Plaintiffs state that they seek the following remedies on behalf of the class:[1]

(1) Declaration that USAPA violated the duty of fair representation;

(2) Order that USAPA take specific affirmative steps to correct injuries caused by that violation;

(3) Order that USAPA take no action reasonably likely to frustrate implementation of the Nicolau seniority list and other aspects of the Nicolau Award;

(4) Order vacating class member obligations to pay agency fees and membership dues until such time that the Company is operating under a single CBA that implements the Nicolau seniority list and other aspects of the Nicolau Award;

---

[1] Although the First Amended Complaint also seeks damages for lost wages, benefits, and working conditions on behalf of the class, the Plaintiffs do not move to certify a class as to those damages issues.

- 2 -

2         (5)    Order directing restitution of fees and dues paid to USAPA by class; and

3         (6)    Award of attorneys' fees and costs.

Plaintiffs claim that the issues of law and fact underlying USAPA's potential liability and the listed remedies are common to the proposed class. They claim that their class action will have the practical effect of tolling the six-month statute of limitations for all class members who may wish to pursue additional compensatory damages if USAPA is found to have breached its duty. It is undisputed that a funding entity ("Leonidas LLC") has been established to manage absent West Pilots's contributions toward the payment of attorney fees for the class action.

When the complaint was amended to include class action allegations, USAPA expressed surprise. USAPA informed the Court that it "denies each and every class allegation and . . . intends to vigorously oppose certification," moving to continue the original accelerated trial date of February 17, 2009. (Doc. ## 91, 92.) On this basis, trial was continued and further briefing was scheduled to take place in January and February 2009. (Doc. # 116, 130.) Later, the Court granted USAPA a further extension of time to file its response in opposition to the Motion for Certification so that additional discovery regarding certification could be completed. (Doc. # 155.) Trial on the merits has been set for April 28, 2009.

**II.  Analysis**

Rule 23(b)(2) permits certification of an injunction class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Any such certification is still subject to Rule 23(a), requiring that all class actions satisfy conditions of numerosity, commonality, typicality, and adequate representation. In this matter, Plaintiffs seek injunctive and declaratory relief in addition to monetary recovery relating to union dues and fees. Because the injunctive and declaratory relief predominates

over the monetary claim and because the other requirements of Rule 23(a) and (b)(2) are satisfied, certification is appropriate in this case.

### A.     Injunction Class Treatment

Rule 23(b)(2) was designed for cases like this one.  Plaintiffs allege that USAPA owed a duty of fair representation to the West Pilots as a whole.  They further allege that USAPA has breached this duty by neglecting contractual obligations assumed by USAPA's predecessor and US Airways to support the implementation of the Nicolau Award.  The Nicolau Award represented an internal union compromise of conflicting interests between the two pilot groups. USAPA's seniority proposal, on the other hand, tilts strongly in favor of East Pilot interests.  According to Plaintiffs, USAPA has chosen to abandon the Nicolau Award solely for the benefit of East Pilots and without regard for the welfare of US Airways pilots as a whole.  Plainly, on these allegations, USAPA "has acted or refused to act on grounds that apply generally to the class" of West Pilots within the meaning of Rule 23(b)(2).  The duty of fair representation extends to all West Pilots, and in this case it runs to a specific interest, the Nicolau Award, that many of them share.  The proposed class shares a common injury arising out of that duty.

The remedy, too, is common to the proposed class, mirroring the injury complained of.  Plaintiffs seek an order that would require USAPA to take remedial measures and to stop obstructing the implementation of the Nicolau Award.  If USAPA were to do so, then the duty to fairly represent the West Pilots would be honored in that regard.  Necessarily, any adjudication respecting such a remedy would impact the proposed class of West Pilots as a whole.[2]  The nature of the claim for injunctive and declaratory relief supports mandatory certification of the class of West Pilots as requested under Rule 23(b)(2) in this case.  *See*

---

[2] In this respect, the proposed class also resembles the type contemplated by Rule 23(b)(1), where the prosecution of separate actions by the class members might effectively adjudicate absent class members' interests or create a risk of incompatible standards of conduct for USAPA. The Court declines USAPA's invitation to decide whether Plaintiffs have waived any grounds for certification outside of Rule 23(b)(2). The answer to that question is not necessary to the disposition at hand.

- 4 -

1 Fed. R. Civ. P. 23(c)(2)(A) (allowing mandatory certification of classes under Rules 23(b)(1) and (b)(2)).

Plaintiffs also seek monetary and declaratory recovery relating to dues and fee payments on behalf of the class. USAPA contends that Rule 23(b)(2) does not extend so far. The Court agrees with both parties that the rule of *Molski v. Gleich* governs this question: Where the claim for injunctive relief "predominates" over any claim for monetary recovery, mandatory certification under Rule 23(b)(2) may still be appropriate. 318 F.3d 937, 949-50 (9th Cir. 2003). "In order to determine predominance," the Court focuses "on the language of Rule 23(b)(2) and the intent of the plaintiffs in bringing the suit." *Id.* at 950.

In this case, the claims for injunctive relief do predominate. Plaintiffs complain of union conduct that threatens their rights in the future as well as the past. The potential damages flowing from the union's behavior are vast and difficult to quantify in their entirety. USAPA's conduct has allegedly deprived West Pilots of wages, promotion opportunities, and other working conditions that they would have enjoyed had the union honored its duty to adopt the Nicolau Award. Plaintiffs seek injunctive relief because they have no adequate remedy at law and want to curtail these ongoing harms. Without an injunction, the proposed class would have little to show for its efforts; the prospective importance of an injunction here dwarfs any monetary award relating to union dues and fees. It is not difficult to conclude that the standard of *Molski* and related authority is met. "[E]ven in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought" and "the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Id.* at 950 n. 15 (quoting with approval *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 163-64 (2d Cir. 2001)); *see also Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1186 (9th Cir. 2007), *reh'g en banc granted*, 2009 WL 365818 (9th Cir. Feb. 13, 2009).[3]

---

[3] *Dukes* reaffirmed *Molski* and that case's rejection of *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), which adopted a bright-line "incidental damages" test

- 5 -

1    USAPA objects that any refund of dues and fees is a legal (as opposed to equitable) monetary remedy that would turn on the individual circumstances of each class member. This reasoning is empty. As a matter of theory, it is of no moment for certification purposes whether monetary recovery finds historical roots in law or equity. Rule 23(b)(2) speaks to remedies of an "injunctive nature or of a corresponding declaratory nature," not remedies of equitable pedigree. Fed. R. Civ. P. 23(b)(2) adv. comm. nn. The *Molski* standard applies whether the monetary relief is equitable or legal.

As a matter of practice, the individualized difficulties that USAPA postulates are irrelevant here. USAPA argues that dues and fees calculations will depend on the individualized circumstances of the West Pilots, who fall into a number of different categories relating to member standing and prior agreements unrelated to this specific case. Plaintiffs' prayer for a refund of dues and fees transcends these categories, however, because it does not relate to the standing or contractual status of individual members but rather to USAPA's failure to meet fiduciary obligations to the West Pilots as a group, obligations that presumably arise anterior to the course of representation. Indeed, as the Court understands Plaintiffs' theory, the breach of fiduciary duty is claimed to nullify obligations compelling the payment of dues and fees. None of USAPA's arguments undermines the conclusion that any proper refunds could be determined by consulting USAPA's records of dues and fee payments.

The Court has already expressed its concern that there may be no legal basis for a class-wide refund of union dues and fees (doc. # 202, at 8), and further briefing is expected as to whether the Plaintiffs state a claim in this respect and whether it was sufficiently alleged in the First Amended Complaint. If Plaintiffs have failed to state a claim for monetary relief

---

for certifying Rule 23(b)(2) class actions. Even under *Allison*'s less flexible standard, certification is appropriate in this case because Plaintiffs seek monetary recovery "to which class members automatically would be entitled once liability to the class . . . as a whole is established" and which is "capable of computation by means of objective standards" with no "complex individualized determinations." *Allison*, 151 F.3d at 415.

- 6 -

1  that is appropriate for class certification, the Court will consider, as appropriate, de-certifying
2  the class as to the monetary claim or dismissing with prejudice the class monetary claim.

3  **B.  General Class Action Requirements**

4  Rule 23(a) permits certification only if four conditions are met: "(1) the class is so
5  numerous that joinder of all members is impracticable; (2) there are questions of law or fact
6  common to the class; (3) the claims or defenses of the representative parties are typical of the
7  claims or defenses of the class; and (4) the representative parties will fairly and adequately
8  protect the interests of the class."  The proposed class of West Pilots satisfies these
9  conditions.

10  **1.  Numerosity**

11  The proposed class contains approximately 1700 members. There is no specific
12  number cut-off for class size. *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 594
13  (E.D. Cal. 1999). Nonetheless, it is safe to say that this class is large enough to take flight.
14  It would be impracticable to join 1700 West Pilots claiming that USAPA's actions have
15  adversely affected their seniority status. USAPA's faint protests on this point ring hollow.
16  The allegations of harm are not confined to "49 or so pre-merger West Pilot furloughees";
17  the administration of dues refunds has nothing to do with numerosity; and the West Pilots'
18  Arizona domicile and "sophisticated communications network" does not make joinder of so
19  many feasible.

20  **2.  Commonality**

21  Likewise, "questions of law or fact common to the class" are not far to seek. The only
22  questions raised on behalf of the proposed class relate to USAPA's unitary duty to represent
23  its whole membership fairly. Plaintiffs allege that this duty was breached in the same manner
24  with respect to all proposed class members, and they seek a single injunction common to the
25  class. These common issues prevail even though different West Pilots may be entitled to
26  different refunds of dues and fees; disparate remedies within the class do not undermine the
27  "permissive" commonality requirement in Rule 23(b)(2) cases. *Hanlon v. Chrysler Corp.*,
28  150 F.3d 1011, 1019 (9th Cir. 1998).

### 3. Typicality

Like the other West Pilots, the named Plaintiffs were on the America West seniority list in September 2008 and on September 20, 2005. Like the other West Pilots, the named Plaintiffs are allegedly aggrieved by USAPA's abandonment of the Nicolau Award for a seniority list that favors the East Pilots. By definition, the use or disuse of the Nicolau Award impacts every West Pilot. The named Plaintiffs' claims are sufficiently typical of the class they seek to represent.

USAPA argues that counsel for Plaintiffs "cherry-picked" the Plaintiffs from the bottom and middle of the America West seniority list because of their immediate vulnerability to furloughs, demotions, and lost promotions. USAPA further adds that some senior West Pilots have little or nothing to gain from the injunctive relief sought because USAPA's proposal grants them some job security and other benefits. But Rule 23(a) does not require identical circumstances. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Different West Pilots will necessarily occupy different ranks on any hierarchical seniority list; these differences do not undermine typicality. As for the claim that USAPA's policies are not detrimental to some or all West Pilots, this issue is contested and relates closely to the merits of the case. USAPA's breach or non-breach of its duty—along with the success or failure of this action—runs to the West Pilot membership as a whole. If USAPA can prove that its actions and policies rationally serve the aggregate welfare of US Airways pilots, it may be that neither the named Plaintiffs nor any other West Pilot can prevail in this fair representation case. In this sense, the named Plaintiffs' claims are typical within the scope of the rule.

### 4. Adequacy of Representative Plaintiffs

USAPA claims that Plaintiffs and their attorneys are inadequate representatives of the proposed class of West Pilots. This argument must be rejected because the representative parties are well qualified, there is no showing of antagonism or conflict with the absentees, and this suit is unlikely to be collusive. *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994).

1  This Order has already outlined the commonality of interest between Plaintiffs and the
2  proposed class of West Pilots.  USAPA has not presented any evidence of antagonism or
3  conflicted interests, and there is no reason for this Court to believe either exists.  *See infra*
4  Section II.B.5.  The relief Plaintiffs seek on behalf of the proposed class runs to the class as
5  a whole.  Though Plaintiffs decided to forgo certification as to damages claims, the
6  certification sought is intended to expedite a determination on the merits while preserving
7  the represented West Pilots' ability to seek damages at a later date.  No opinion is here
8  expressed as to the correctness of the latter theory, but it finds reasoned support in
9  *Swierkowski v. Consol. Rail Corp.*, 168 F. Supp. 2d 389, 395 (E.D. Pa. 2001).

10  USAPA argues that the Plaintiffs do not sufficiently participate in the litigation
11  because Leonidas LLC has been established as a funding and liaison mechanism managed
12  by a "control group" of West Pilots.  USAPA urges that the Plaintiffs are therefore too far
13  removed from the case to qualify as class representatives.  To be sure, it is impermissible to
14  select a "stand-in plaintiff" with undeniable and overwhelming ignorance regarding the
15  nature of the action.  *Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 WL 1223777,
16  at *2-3 (N.D. Cal. 2007).  However, the Plaintiffs' *bona fides* is obvious in this case.
17  Plaintiffs are representative members of the discrete group of West Pilots with a substantial
18  and legitimate interest in this litigation.  They participate in litigation strategy sessions with
19  the "control group," review court filings, and communicate regularly with counsel.  The
20  establishment and use of Leonidas LLC to fund the litigation and communicate with the
21  proposed West Pilot class is, if anything, a prudent discharge of Plaintiffs' representative
22  function.

23  USAPA's remaining arguments on this point barely merit discussion.  USAPA
24  contends that the Plaintiffs displayed ignorance of key portions of the case in their
25  depositions.  The deposition excerpts presented to the Court show nothing more than
26  uncertainty and imprecision relating to legal concepts in this case, concepts which no lay
27  plaintiff could be reasonably expected to articulate.  For example, one named Plaintiff was
28  asked, "Do you know how many causes of action are in this lawsuit?"  He answered, "I'm

- 9 -

1  not an attorney. I don't know." In fact, he could not know because as asked, this question
2  has no single answer. Does it refer to the original action or the consolidated action? Does
3  it refer to the causes of action still pending, or the causes of action originally brought?
4  Vagueness aside, a non-lawyer cannot be expected to understand the term "causes of action"
5  as distinct from many other terms such as "legal theories," "culpable acts," "triable questions
6  of fact," or "cases."

7  In another line of questioning about the case, Plaintiffs were asked if it still involved
8  contract-based claims, or if contract claims could come into the litigation at a later date.
9  Despite the case's complexity and the many quiddities of federal labor law, Plaintiffs showed
10 no deficit of understanding. Their affirmative replies demonstrated a high-level sense of the
11 case's substance and not, as USAPA contends, a mistaken impression. Although the pending
12 fair representation claim does not find its source in contract law, this Court has explained
13 before how contract principles support the factual and legal predicate of the action. (Doc. ##
14 84, at 9-10; 202, at 5-6.) Similarly, Plaintiffs are not deficient for acknowledging in
15 depositions that USAPA is not delaying negotiations (as previously asserted) but is currently
16 negotiating toward a single CBA on terms inconsistent with the Nicolau Award. Such
17 statements do not negate the basic allegation that USAPA has abdicated its duty—through
18 delay or otherwise—to honor the Nicolau award.

19 There is no issue as to Plaintiffs' abilities to discharge their fiduciary obligations.
20 Their interests are not in conflict with the class, and they are endeavoring actively to pursue
21 the litigation to the maximum benefit of the proposed class. *In re Quintus Sec. Litig.*, 148
22 F. Supp. 2d 967, 970 (N.D. Cal. 2001). The record shows that Plaintiffs were provided with
23 an explanation of their fiduciary duties when the complaint was amended to allege a class
24 action. USAPA presents deposition testimony wherein Plaintiffs expressed uncertainty
25 regarding the existence and extent of "fiduciary duties" so termed, but nothing in the record
26 suggests they substantively misunderstand their role in the litigation. The predominant relief
27 they seek is an injunction to enforce USAPA's duty, a duty owed to all West Pilots in
28 common. The same principle disposes of the claim that Plaintiffs are not adequate because

1  they have sworn off settlement. Plaintiffs' ultimate goal is to have the union abide by its
2  duty of fair representation; the injunctive relief sought does not appear amenable to
3  settlement.
4       USAPA faults Plaintiffs for not knowing why their attorneys chose to schedule an
5  arbitration in May rather than January 2009, when USAPA was proceeding to arbitrate a
6  related but significantly narrower grievance. (*See* doc. # 84, at 8.) Plaintiffs cannot be
7  expected to know the intricacies of counsel's every scheduling decision.
8       **5.**    **Adequacy of Counsel**
9       As to the qualifications of counsel, this Court has considered the factors listed in Rule
10  23(g) and those factors militate in favor of certification. Counsel for Plaintiffs has done
11  significant work investigating potential claims in the action. Several of the original claims
12  have been dismissed for lack of subject matter jurisdiction and failure to state a claim, but
13  not for lack of vigor in prosecuting the case. Counsel for Plaintiffs has also demonstrated
14  substantial experience with complex class actions and labor disputes as well as a functional
15  understanding of relevant legal principles. There appears to be no hesitation committing
16  sufficient resources to represent the class, and a funding mechanism exists for the collection
17  of legal fees from class members who wish to contribute to the litigation. *See* Fed. R. Civ.
18  P. 23(g)(1)(A).
19       USAPA's other arguments concerning Plaintiffs' counsel are easily rejected.
20  Plaintiffs' filing of a state court class action based upon alternative theories was not
21  "duplicative" in any improper sense. Plaintiffs' challenge to USAPA's assertion of Seventh
22  Amendment rights was consistent with the rules and not necessarily inconsistent with their
23  decision to seek a refund of dues and fees. (Doc. # 202, at 2 n.1, 8.) Plaintiffs' counsel has
24  explained that it added class allegations to its federal complaint because the Court's earlier
25  denial of preliminary injunctive relief against the airline exposed many absent West Pilots
26  to detriment. USAPA's complaints regarding arbitration scheduling, details of a contested
27  stipulation, and discovery disputes add nothing to the analysis.
28

1  Finally, USAPA argues that Plaintiffs' counsel is deficient for failing to recognize and
2  address a conflict of interest between the Plaintiffs and Leonidas LLC. Leonidas LLC has
3  encouraged West Pilots to continue paying union dues and fees while the Plaintiffs have sued
4  for a refund of those dues and fees. By continuing to pay dues, the West Pilots hope to
5  preserve their status and participation in the union until broader rights have been adjudicated.
6  The cautionary payment of dues poses no obstacle to possible future refunds; there is not
7  even a hint of conflict between Leonidas LLC's advice and the actions of counsel.
8  IT IS THEREFORE ORDERED that Plaintiffs' Motion for Certification (doc. # 120)
9  is granted.
10  DATED this 10th day of March, 2009.

_____
Neil V. Wake
United States District Judge