**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Don Addington; John Bostic; Mark Burman; Afshin Iranpour; Roger Velez; Steve Wargocki,<br><br>    Plaintiffs,<br><br>vs.<br><br>US Airline Pilots Association; US Airways, Inc.,<br><br>    Defendants. | No. CV-08-01633-PHX-NVW<br>(consolidated)<br>CV-08-01728-PHX-NVW<br><br>**ORDER** |
| US Airways Incorporated, a Delaware corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>Don Addington; Afshin Iranpour; Roger Velez; John Bostic; Steve Wargocki; Mark Burman; US Airline Pilots Association, an unincorporated association,<br><br>    Defendants. | No. CV-10-01570-PHX-ROS |

Before the Court is Plaintiffs' Motion to Transfer Related Case, Pursuant to LRCiv 42.1 (Doc. 642). The Motion is based on the transfer authority of LRCiv 42.1, and the Court addresses only that rule.

**I.      Legal Standard**

LRCiv 42.1(a) provides that a party may move to transfer a case:

> . . . to a single Judge whenever two or more cases are pending before different Judges and any party believes that such cases: (1) arise from substantially the same transaction or event; (2) involve substantially the same parties or property; (3) involve the same patent, trademark, or copyright; (4) call for determination of substantially the same questions of law; or (5) for any other reason would entail substantial duplication of labor if heard by different Judges.

The judge to whom the case with the lowest case number is assigned will hear and decide the motion. *Id.* LRCiv 42.1(d) provides:

> In determining the Judge to whom the case or cases will be assigned pursuant to subparagraphs (a) or (b) above, the following factors may be considered: (1) whether substantive matters have been considered in a case; (2) which Judge has the most familiarity with the issues involved in the cases; (3) whether a case is reasonably viewed as the lead or principal case; or (4) any other factor serving the interest of judicial economy.

District courts have broad discretion in interpreting, applying, and determining the requirements of their own local rules and general orders. *United States v. Gray*, 876 F.2d 1411, 1414 (9th Cir. 1989). Further, the district court has broad discretion under Fed. R. Civ. P. 42(a) to consolidate cases pending in the same district. *Investors Research Co. v. U.S. Dist. Ct. for Cent. Dist. of Calif.*, 877 F.2d 777, 777 (1989). Because the standard for transfer under LRCiv 42.1 is similar to the standard for consolidation under Fed. R. Civ. P. 42(a), the Court has broad discretion in deciding a motion to transfer under LRCiv 42.1(a). *Bae Sys. Mobility & Prot. Sys., Inc. v. Armorworks Enter., LLC*, Case Nos. CV08-1697-PHX-JAT (Lead), CV08-2060-PHX-JAT (Cons.),WL 995862 at *1 (D. Ariz. Apr. 14, 2009); *Pangerl v. Ehrlich*, Case Nos. CV06-1464-PHX-MHM, CV06-1465-PHX-FJM, WL 686703 at *2 (D. Ariz. Mar. 2, 2007).

**II.     Background**

Plaintiffs seek to transfer *US Airways v. Addington*, No. CV10-1570-PHX-ROS ("*US Airways*") to this Court pursuant to LRCiv 42.1(a) because a related case, *Addington v. US Airline Pilots Association*, No. CV08-1633-PHX-NVW ("*Addington*"), previously was assigned to this Court. Both cases arose out of a seniority dispute precipitated by the merger of US Airways, Inc., and America West Airlines in 2005. *Addington v. US Airline Pilots Ass'n*, 606 F.3d 1174, 1176 (9th Cir. 2010). Following the merger, the

companies' respective seniority lists had to be integrated to create a single list for the merged airline. *Id.* Pilots who had been employed by the former US Airways generally had been hired earlier and favored a strict date-of-hire system, and pilots who had been employed by the former America West sought a seniority system that would include consideration of the relative pre-merger strength of the former America West over the former US Airways. *Id.*

In *Addington*, plaintiff pilots brought suit on behalf of a class of similarly situated pilots formerly employed by America West Airlines. They alleged that their current union, the US Airline Pilots Association ("USAPA") breached its duty of fair representation. The case was tried to a jury. On May 13, 2009, the jury found in the plaintiffs' favor that USAPA had breached its duty by abandoning an arbitrated seniority list in favor of a date-of-hire list solely to benefit one group of pilots at the expense of another. At the conclusion of the jury trial, a bench trial was held to determine the propriety, nature, and scope of any injunctive relief that would issue. On July 17, 2009, the Court awarded injunctive relief. On July 23, 2009, USAPA filed a notice of appeal to Court of Appeals for the Ninth Circuit.

On June 4, 2010, the Court of Appeals held that the plaintiffs' duty of fair representation claim was not ripe and remanded the case with directions that the action be dismissed. *Addington*, 606 F.3d at 1184. On August 10, 2010, the Court of Appeals mandate in *Addington* issued, effecting its judgment entered June 4, 2010. (Doc. 647.) On August 13, 2010, pursuant to the mandate, the Court ordered the Clerk to enter judgment dismissing *Addington* for lack of subject matter jurisdiction. (Doc. 650.) On October 13, 2010, the Court denied Plaintiffs' motion for relief from the judgment pursuant to Fed. R. Civ. P. 60(b). (Doc. 659.) The *Addington* proceedings are concluded.

On July 26, 2010, US Airways filed a Complaint for Declaratory Relief against USAPA and the *Addington* plaintiff class, seeking a declaration as to the parties' respective rights and obligations. In *US Airways*, the airline seeks one of three alternative declarations, which are generally summarized as: (1) USAPA's position regarding a

1 merged seniority system breaches its duty under the Railway Labor Act and its duty of
2 fair representation and therefore US Airways is prohibited from accepting USAPA's
3 position; (2) USAPA's position does not breach its duty under the Railway Labor Act or
4 its duty of fair representation and therefore US Airways is not prohibited from accepting
5 USAPA's position; or (3) regardless of whether USAPA's position would breach its duty
6 under the Railway Labor Act or its duty of fair representation, US Airways would not be
7 liable to the *Addington* plaintiff class under the Railway Labor Act or otherwise if it were
8 to enter into a collective bargaining agreement incorporating USAPA's position.

**III.    Analysis**

**A.    Factors to Be Considered in Determining a Motion to Transfer a Related Case Under LRCiv 42.1 Weigh in Favor of Transfer.**

Both *Addington* and *US Airways* arise from substantially the same transaction or event, *i.e.*, the necessity of merging pilot seniority lists as a result of the 2005 airline merger. They involve the same parties, except for US Airways, which was dismissed early in the *Addington* litigation. They both involve the pilots' seniority rights and call for determination of substantially the same questions of law. *US Airways* will call for determination of substantial new questions of ripeness and new substantive questions of Railway Labor Act law applicable to US Airways. Substantive matters related to *US Airways* were considered in *Addington* and have not yet been considered in *US Airways*. But the substantive rulings in *Addington* have been vacated pursuant to mandate, and both cases would now write on clean slates if there were anything to write in *Addington*, which there is not. Significant time and effort were expended processing *Addington* through discovery, a jury trial on liability, and a bench trial on remedies. As a result, the undersigned judge has the most familiarity with the issues involved in both cases, and transferring *US Airways* would serve the interest of judicial economy.

**B.     Unusual Circumstances Here Do Not Require Denial of Transfer.**

USAPA reasons that the factors the Ninth Circuit considers in deciding whether to reassign a case on remand for new trial should be applied by a district court to decide whether to transfer a related case under LRCiv 42.1.  The Court does not decide whether the analysis for deciding reassignment on remand should be applied to LRCiv 42.1 determinations because, even if it should, the analysis does not favor denial of Plaintiffs' transfer request.

To decide whether to reassign a case on remand, the Ninth Circuit makes two inquiries.  *In re Ellis*, 356 F.3d 1198, 1211 (9th Cir. 2004).  First, the appellate court asks whether the district court has exhibited personal bias requiring recusal from a case.  *Id.* USAPA does not contend the transfer request should be decided on the basis of personal bias requiring recusal.  Second, in the absence of a showing of personal bias, the appellate court asks whether unusual circumstances warrant reassignment, including:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* (internal quotation marks and citation omitted).  USAPA contends that unusual circumstances here warrant the denial of transfer of a related case.

Regarding the first category of unusual circumstances warranting case reassignment, USAPA contends the Court would reasonably be expected to have substantial difficulty in putting out of its mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected.  The Court would have no difficulty putting out of its mind views or findings determined to be erroneous. Moreover, in this case the Ninth Circuit did not determine that any of the Court's views or findings were erroneous except for the question of ripeness.   Further, even reversal on the merits does not require reassignment on remand for new trial.  Judges routinely

- 5 -

1 comply with appellate mandates without difficulty. There is nothing different about this
2 case.
3     Although on the one hand USAPA disclaims any recusal based on personal bias, it
4 also states its position is "that this Court is not impartial, that it could not be impartial
5 towards USAPA in any further proceedings, and that such impartiality will unfairly
6 prejudice USAPA by depriving it of constitutional and other rights." (Doc. 648 at 16.) In
7 support of its position, USAPA identifies specific findings and rulings made in
8 *Addington*, which it describes as "the Court's strongly expressed views." But "rulings
9 alone almost never constitute a valid basis for a bias or partiality motion." *United States*
10 *v. Sutcliffe*, 505 F.3d 944, 958 (9th Cir. 2007).
11     Moreover, the record shows the Court ruled for USAPA on many important
12 questions, including:
13     -- Granting USAPA's motion to consolidate the two actions.
14     -- Dismissing Plaintiffs' removed state court action as entirely preempted by
15         federal law.
16     -- Dismissing US Airways for lack of jurisdiction, which has collateral
17         benefits for USAPA.
18     -- Finding USAPA entitled to jury trial.
19     -- Granting USAPA judgment on the pleadings on Plaintiffs' claim for
20         restitution of union dues and fees.
21     -- Granting and denying many motions *in limine* for both sides.
22     -- Denying Plaintiffs' motion for additional discovery.
23     -- Striking Plaintiff's supplemental reply.
24     -- Giving substantive jury instructions on the duty of fair representation much
25         closer to USAPA's request than Plaintiffs'.
26     In truth, this was a bitterly fought case for the highest stakes with recurring
27 accusations of bad faith. It demanded intensive court involvement and numerous rulings
28 on substance, discovery, procedure, and even courtroom decorum. A judge does not

- 6 -

1  forfeit impartiality by controlling such a case and making all rulings required, including
2  rejection in clear terms of the most cherished contentions of parties.
3        In its response to the transfer motion, USAPA incorrectly states: "Moreover, the
4  transfer would be done in the face of plaintiffs' expressed desire to have the case heard by
5  a judge with whom, according to plaintiffs, USAPA has long had a relationship of
6  'hostility,'" and "Plaintiffs' hostility perception constitutes direct evidence that the
7  appearance of justice is not obtainable." (Doc. 648 at 16.) In fact, Plaintiffs said, "[T]his
8  is at least the third time that USAPA has shown overt hostility towards Judge Wake."
9  (Doc. 644-1 at 2.) Plaintiffs also quoted from USAPA's Opening Brief to the Ninth
10 Circuit, in which USAPA states that the district court's statements and actions reflected
11 hostility to USAPA. (Doc. 644-1 at 2 n.1.) This may be direct evidence of Plaintiffs'
12 perception of USAPA's overt hostility toward the Court, but not the reverse.
13       As to the second category of unusual circumstances warranting case reassignment,
14 consideration of whether reassignment is advisable to preserve the appearance of justice
15 does not weigh against transfer. USAPA states, "The Court's impartiality has been made
16 an issue of record by USAPA's public appeal. . . . Now, plaintiffs' motion to transfer
17 inevitably invites 5,000 pilots to conclude that the outcome of the Company's action
18 would be pre-ordained, were this Court to accept transfer." (Doc. 648 at 16.) In essence,
19 USAPA reasons that the Court should not preside over *US Airways* because USAPA itself
20 has created an appearance of partiality by proclaiming it so. The even-handed application
21 of the LRCiv 41.2 factors directing which judge is best assigned transferred and
22 consolidated cases should not be defeated by a party's idea that adverse rulings mean
23 bias.
24       Regarding the third category of unusual circumstances warranting case
25 reassignment, *i.e.*, whether reassignment would entail waste and duplication out of
26 proportion to any gain in preserving the appearance of fairness, Plaintiffs contend there
27 would be "substantial duplication of effort" for a new judge because *US Airways* arises
28 out of the same circumstances and involves the same legal issues as does *Addington*.

USAPA does not dispute Plaintiffs' contention and argues only that the duplication of effort is needed to preserve the appearance of justice, which, as shown above, is not necessary.

Therefore, application to Plaintiffs' transfer motion of the factors the Ninth Circuit considers in deciding whether to reassign a case on remand does not preclude or even weigh against transferring *US Airways* to this Court, even assuming that standard applies to transfer under LRCiv 42.1.

### C. By Its Express Terms, LRCiv 42.1 Applies Only When Two or More Cases Are *Pending*.

LRCiv 42.1(a) states: "Any party may file a motion to transfer the case or cases involved to a single Judge whenever two or more cases are pending before different Judges . . . ." On August 10, 2010, the Court of Appeals remanded *Addington* with directions that the action be dismissed. On August 13, 2010, pursuant to the mandate, the Court ordered the Clerk to enter judgment dismissing *Addington* for lack of subject matter jurisdiction. Plaintiffs' motion for Rule 60(b) relief has been denied. *Addington* is not *pending*. Because there is no case pending before this Court related to *US Airways*, under LRCiv 42.1 the undersigned judge may not transfer *US Airways* to himself over objection.

The single case Plaintiffs cite as supporting transfer to and by a transferee judge who has no pending case does not so hold. The case only means that the parties can agree to such a transfer. Plaintiffs cite *Arizona Minority Coalition for Fair Redistricting v. Arizona Independent Redistricting Commission*, 366 F. Supp. 2d 887, 893 (D. Ariz. 2005), in which a new case was transferred to a judge who had presided over a related, but now closed, case. *Arizona Minority Coalition*'s circumstances differ significantly from those here. *See id.*; *Navajo Nation v. Arizona Indep. Redistricting Comm'n*, 230 F. Supp. 2d 998 (D. Ariz. 2002).

In *Navajo Nation*, assigned to District Judge Roslyn O. Silver, a three-judge panel was convened on May 8, 2002, to determine whether Arizona's legislative districts were

- 8 -

1  unconstitutional and, if necessary, to adopt an interim legislative redistricting plan that
2  met the requirements of the United States Constitution and the Voting Rights Act of
3  1965, 42 U.S.C. §§ 1973, 1973c.  230 F. Supp. 2d at 1000.  Resolution of legislative
4  district boundaries was needed before state legislative candidates could collect signatures,
5  qualify for public contributions, and file petitions for the 2002 elections, and the statutory
6  deadline for completing those tasks was June 12, 2002.  *Id.* at 1003.  On May 10, 2002,
7  two separate actions were consolidated, and numerous groups and governmental entities
8  were granted leave to intervene.  The court appointed a special master to evaluate
9  evidence submitted by the parties in support of their proposed redistricting plans and to
10 assist the court, if necessary, in developing a legal plan.  *Id.* at 1004.  On May 20, 2002,
11 the Department of Justice denied preclearance, which is required by the Voting Rights
12 Act, to the Independent Redistricting Commission's ("IRC") plan and objected
13 particularly to five of the proposed districts.  On May 23, 2002, upon request from the
14 Arizona Secretary of State and Citizens for Clean Elections, the court issued an order to
15 address the emergency regarding candidate petitions, signatures, and requests for funds.
16 *Id.* at 1005.

17        On May 24, 2002, the parties notified the court that, after holding public hearings,
18 the IRC had adopted an interim plan for the 2002 elections and all the remaining parties
19 had agreed to it.  On May 28, 2002, the parties filed a stipulated statement of law and
20 evidence supporting their joint position that the interim plan should be adopted by the
21 court.  The same day, the court declared the Arizona 1994 legislative districts
22 unconstitutional as of 2002, and the special master recommended that the court accept the
23 IRC's interim plan for the 2002 elections.  On May 29, 2002, after hearing evidence, the
24 court ordered (1) the use of the IRC's interim plan for the 2002 elections, (2) that
25 legislators elected in 2002 pursuant to the interim were to serve for the full two-year term
26 beginning in January 2003, and (3) emergency relief for counties to enable them to
27 prepare for and hold the 2002 legislative district elections.  *Id.*  On October 7, 2003, the
28 case was settled between the parties and dismissed.  On October 30, 2003, an appeal was

1  taken, but subsequently dismissed pursuant to stipulation of the parties. On April 15,
2  2004, the Ninth Circuit mandate issued.

3        Meanwhile, during the summer of 2002, the IRC developed a new legislative plan
4  for the 2004 through 2010 elections. *Arizona Minority Coal.*, 366 F. Supp. 2d at 890.
5  The Department of Justice precleared the IRC's 2002 plan in February 2003. *Id.* at 891.
6  Then, the Arizona Minority Coalition challenged the IRC's 2002 plan in state court, and
7  in January 2004 the trial court declared the 2002 plan violated the state constitution,
8  enjoined the use of the 2002 plan for the 2004 legislative election, and ordered the IRC to
9  appear in March 2004 with a new legislative district plan. The March 2004 plan was
10 advertised for 30 days for public comment, revised, and finalized on April 12, 2004. *Id.*
11 The April 12 plan was submitted to the Department of Justice for preclearance on April
12 20, 2004, and if certain events had occurred, the preclearance deadline would have
13 extended beyond the August 5, 2004 early balloting date for the primary election.

14       Therefore, on April 23, 2004, the Arizona Minority Coalition and several other
15 plaintiffs initiated *Arizona Minority Coalition*, No. CV04-0797, seeking a preliminary
16 and permanent injunction directing the IRC and the Arizona Secretary of State to conduct
17 the 2004 legislative primary and general elections under the April 12 plan or an
18 alternative legislative redistricting plan that complied with the United States Constitution,
19 the Voting Rights Act, and the Arizona Constitution on an emergency interim basis. *Id.*
20 at 892. The case initially was assigned to District Judge Mary H. Murgia. *Id.* On April
21 28, 2004, the IRC moved to transfer *Arizona Minority Coalition* to Judge Silver under
22 LRCiv 1.2(g)(1) (now numbered as LRCiv 42.1). On April 30, 2004, Judge Murgia held
23 a preliminary pretrial conference during which she asked the parties whether any objected
24 to the requested transfer, and none did. On May 5, 2004, Judge Silver granted the IRC's
25 motion to transfer and ordered the interveners in *Navajo Nation* to move to intervene in
26 *Arizona Minority Coalition*, if desired, no later than May 7, 2004.

27       This greatly abbreviated description of the procedural history leading to the
28 transfer of *Arizona Minority Coalition* to Judge Silver plainly demonstrates extraordinary

- 10 -

1  circumstances of extreme urgency and complexity in which the second case was, in
2  essence, a continuation of the first case. None of the parties to *Arizona Minority Coalition*
3  objected to transferring the case to Judge Silver, making the transfer essentially
4  stipulated.  (Case No. CV04-0797, Doc. 12.)   Thus, the transfer of *Arizona Minority*
5  *Coalition* was based on agreement.  That unopposed transfer was not a precedent.
6      The plain language of LRCiv 42.1(a) requires for an unconsented transfer that the
7  related case be "pending" before the transferee judge alone is authorized to transfer the
8  other case to himself.  That requirement fails on this motion.
9      IT IS ORDERED that Plaintiffs' Motion to Transfer Related Case, Pursuant to
10 LRCiv 42.1 (Doc. 642) is denied.
11     DATED this 18th day of October, 2010.

                                              Neil V. Wake
                                     United States District Judge